UNITED STATES BANKRUPTCY COURT     <u>FOR PUBLICATION</u>
WESTERN DISTRICT OF NEW YORK

---

In re

    Annette J. Moorhouse                        Case No. 11-14319 K
    David A. Moorhouse

                              Debtors

---

Morris L. Horwitz, Trustee

                              Plaintiff

            -vs-                             AP No. 12-1018 K

Gerald Rote
Annalisa Rote

                              Defendants

---

<u>OPINION, DECISION AND ORDER</u>

Morris L. Horwitz, Esq.
14 Lafayette Square Suite 1440
Buffalo, NY 14203

Trustee/Plaintiff

Mark E. Lewis, Esq.
4431 Union Road
Cheektowaga, NY 14225

Attorney for Defendants

       The two questions before the Court are these: What, if anything, can a Chapter 7 trustee attack under 11 U.S.C. § 547 if a mortgage was fully and properly executed outside the preference period, but recorded two years later, within the preference period? And if such trustee prevails, then what has the Chapter 7 estate gained?

These questions are so frequently presented in bankruptcy cases[1] that the answers are thought to "go without saying."[2]  In this case, the <u>Defendants</u> are not lawyers and so they understandably ask the Court to explain why it is that by virtue of words like "avoiding perfection-by-recordation as a preference," they will become unsecured creditors rather than mortgagees.  And the <u>Debtors</u> ask why the Trustee might eventually be permitted to sell their house out from under them, given that the Defendants/Mortgagees are "family."

The Court will address various arguments in order.

## DISCUSSION

The Court regrets that it must first engage in "legal-speak."  It will speak more clearly later.

First, the Defendants extrapolate from cases arising out of "land contracts."  Citing authority for the propositions (1) that a contract <u>vendor</u> holds the "legal title in trust for the <u>vendee</u>," but retains an "equitable lien on the property for the payment of the purchase price," and (2) that "the contract <u>vendee</u> is vested with equitable title to that property upon the execution of

---

[1] A third question is also addressed below, and is not common.  "If the mortgage is set aside, are monthly payments made upon it during the preference period and after the filing of the petition recoverable by the Trustee?"

[2] The automobile context provides a useful example.  Although New York statutes have since changed, there was a time when the failure of a car lender to take the necessary steps to record its lien in a timely fashion had the well-understood result that a bankruptcy trustee "stepped into the shoes" of the lender (who thus became an unsecured creditor).  It was so well understood that no-one bothered to do anything "of record."  Trustees did not file Adversary Proceedings (or even Motions) to set aside the unperfected (or preferentially-perfected) lien and preserve it for the benefit of the estate under 11 U.S.C. § 551.  The car lenders and trustees knew what the law was, and honored it without formalities.  Not once in over 21 years on the Bench has this writer been told that after a debtor has paid the lien balance to the trustee (and received a "release of lien" from him or her), the original lender/lienholder still asserted a lien.  The results of the law could "go without saying," and it operated without the need for "record process."

the contract," the Defendants argue that their position should be no worse than that of a contract vendor under a land contract. The problem with this argument is that the cases they cite deal only with the rights between the contract vendor and the contract vendee. *Hogan v. Weeks*, 178 A.D.2d 968, 579 N.Y.S.2d 777 (N.Y. App. Div. 1991); *Heritage Art Galleries, Ltd. v. Raia*, 173 A.D.2d 441, 570 N.Y.S.2d 67, 68 (N.Y. App. Div. 1991). They do not deal with the lien rights of creditors who come between, or the rights of a trustee in bankruptcy. Just as a mortgage must be recorded in order to protect a mortgagee against certain subsequent lienholders or bankruptcy trustees, the same is true of a land contract. See N.Y. Real Property Law § 291, et. seq.

(Moreover, although the Debtors here bought the house from a relative, the Defendants (the lenders) were not the previous owners; *i.e.*, this is not a purchase-money mortgage taken back by the sellers. This further distinguishes the present matter from "land contracts.")

Next, the Defendants argue the U.S. Supreme Court case of *Sawyer v. Turpin* (91 U.S. 114 (1875)) where the High Court held that the transfer challenged there "takes nothing away from the other creditors." That case, however, is not applicable. The transfer challenged there was the substitution of a mortgage for a prior grant of full title (given only as security, however). The High Court stated "The mortgage covered the same property. It embraced nothing more. It withdrew nothing from the control of the bankrupt, or from the reach of the bankrupt's creditors, that had not been withdrawn by the [earlier] bill of sale. Giving the mortgage in lieu of the bill of sale, as was done, was, therefore, a mere exchange in the form of the security. In no sense can it be regarded as a new preference." Because statutes and standards

change so much over time, it is sometimes hard to interpret older cases. It appears to this writer that the earlier "bill of sale" had the same effect as a "deed"; that the earlier transfer could not be attacked in bankruptcy (perhaps it was too old); and that the High Court held that substituting (during the preference period) a lesser form of "security" - - a mortgage, rather than title - - did not take from that debtor's creditors anything that those creditors had not already lost before the preference period began.

Today, the important thing for the Defendants to focus upon is the precise language of the current statute. Naturally they focus on the definition of "transfer" contained in 11 U.S.C. § 101(54) (A). "The term 'transfer' means - - (A) the creation of a lien . . . ." They argue that the lien was created when the mortgage was granted, not when it was recorded. However, this ignores the more precise definition of "transfer" contained in the preference statute itself. 11 U.S.C. § 547(e) (2)(B) states that "For the purposes of this section . . . a transfer is made **at the time such transfer is perfected, if such transfer is perfected after . . . 30 days [after] the transfer takes effect between the transferor and the transferee**." [Emphasis added.] 11 U.S.C. § 547 (e)(1)(A) defines "perfection." It states that "For the purposes of this section - - (A) a transfer of <u>real property</u> . . . is perfected when a *bona fide* purchaser of such property from the Debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee . . . ". [Emphasis added.] In New York, that occurs upon recordation in the office of the appropriate county clerk.

The Court thus rejects the Defendants' argument to the effect that for all § 547 purposes, recordation of an older mortgage is not a challengeable transfer. The recordation is

now set aside because it came too late.

Now that recordation is set aside because of the statute, the Trustee may set aside not only the recordation, <u>but also the mortgage itself</u>. This is because the statute says that the transfer of the mortgage interest is <u>deemed to have been "**made**"</u> when the mortgage was <u>perfected</u>.[3] And so the mortgage itself may be set aside by the Trustee, and it may be "preserved" under 11 U.S.C. § 551 for the benefit of all of the Debtors' creditors, including the Defendants.

Lastly the Defendants raise the "ordinary course" defense under 11 U.S.C. § 547(c)(2). They argue "The recording of the mortgage was pursuant to the ordinary course of financial affairs of the Debtor and the Defendants. It was fully intended by the parties that the mortgage . . . attached to the Debtor's property. The recording simply solidified that understanding. . . . Further, this affirmative defense . . . does not require that the [Defendants] be in the business of mortgage lending, only that the payments and the filing of the mortgage . . . were within the normal financial affairs."

The above-quoted provisions of § 547(e) negate the Defendants' argument. The section 547(c)(2) defense deals only with transfers "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of a debtor and the transferee . . . ". Perfection is not "payment of a debt." Rather, perfection of a lien is what validates a lien against the rest of the world, including a bankruptcy trustee. It elevates it against other creditors. By its language, § 547(c)(2) does not apply, and the interpretation urged by the Defendants is

---

[3]At oral argument, this Court stated a contrary view about the Trustee's ability to set aside the mortgage. The Court is now persuaded that the Trustee was correct in his point of view.

inconsistent with § 547(e).

What results is this:

(1) The mortgage is unenforceable against the Debtors' other creditors (who are represented by the Trustee).

(2) The house is unencumbered.  (There happen to be no other liens.)

(3) The Trustee may either sell the house (but setting aside to the Debtors their allowable exemption) or "preserve" the mortgage for the benefit of all creditors (under 11 U.S.C. § 551) and collect it (over time or under other terms to be negotiated).

(4) The Debtors may not now claim a higher exemption, because 11 U.S.C. § 522 (g)(1)(A) states that if a trustee sets aside a property interest that a debtor transferred <u>voluntarily</u>, the debtor may not claim an exemption in the property interest that the Trustee has recovered.

(5) The Defendants are now unsecured creditors who will share-and-share-alike with the Debtors' other unsecured creditors.  (Indeed, they might hold the largest unsecured claim against whatever funds the Trustee recovers, whether from the house or from other assets.)

It is all too common for family members to fail to take the legal steps necessary to "perfect" an intra-family transfer "against the rest of the world" (which includes the trustee in an eventual bankruptcy).  The trustee represents the creditors of the transferor or transferee, depending upon which of the two has filed for bankruptcy relief.  In over twenty years on the Bench this writer has heard tens of thousands of cases.  Dozens, if not hundreds, have involved matters in which the creditors who did not properly protect their interests were the family members of a debtor.

Sometimes they are not aware of the need to do so because they do not think it necessary to hire a lawyer. Sometimes they know the costs of "perfection" - - recording a mortgage in New York could cost hundreds or thousands of dollars, depending on the size of the mortgage - - but they think the expense to be unnecessary "because the borrower is 'family'."

Such thinking is penny-wise and pound-foolish. Bankruptcy on one side's part or the other side's part is always a <u>possibility</u>, at least.

Real estate is not the only subject of this type of case (although real estate usually involves the highest amount of money). The most common is the car "titled" to the son or daughter, but paid-for in full by mom or dad who were to be repaid by the son or daughter (and maybe were repaid). There is a way in New York for mom or dad to perfect a lien on the car, but too many moms or dads choose not to use it. Then they are surprised to find no recourse to the car when the son or daughter ends up as a debtor in this Court.

Also common is somewhat the reverse. See *In re Wittmeyer*, 311 B.R. 137 (Bankr. W.D.N.Y. 2004). Daughter or son or spouse makes payments on the car, but it is "titled" to mom or dad or spouse" for convenience." (In this Court's experience that means for cheaper insurance rates or because the son or daughter is uninsurable, or because mom or dad or spouse had to take out an auto loan to buy the car (and so had to take title).) Then the mom or dad or spouse (ex-spouse in *Wittmeyer*) ends up as a debtor in this Court. The son or daughter or ex-spouse claims to be the "equitable" owner of the non-exempt equity in the car, not the trustee.

It has been the view of this Court that no "equitable" claim of ownership or lien can be honored here against other creditors when a "legal" claim of ownership or of lien was fully

available to the claimant, but was not sought.  As this Court and many other courts have explained before, a failure to seek complete protection by virtue of a readily-available statute or regulation will not be rewarded in bankruptcy court.  *Wittmeyer*, at 138-139.   Many highly-skilled professionals struggle mightily to perfect an interest in property, but fail to do so properly.  That often is in the context of the Uniform Commercial Code.  If one spells the debtor's name wrong, one might the lose the lien because a potential creditor searching the U.C.C. lien index will not find the borrower there.  (E.G. *Reisdorf Bros., Inc. v. Clinton Corn Processing Co.*, 516 N.Y.S.2d 375 (N.Y. App. Div. 4th Dept. 1987).)  If the collateral is not properly described in a UCC filing, one may lose because a potential lender thinks that a particular asset is "free and clear."  If the UCC filing comes too late after the transaction, one may lose because the "perfection" was not sufficiently "contemporaneous."  And so forth.

In other words, great and diligent efforts to "perfect" either title or lien sometimes fail.  Given that fact, for the Court to grant protections that were not even <u>sought</u> would require that the Court pretend that if due measures had been taken, those efforts would have been accomplished with enough precision and accuracy that they would have been successful.[4]

Now to the question of payments made on the mortgage since the date of the Petition.

---

[4] If this statement seems to a reader to be extreme in the context of an unrecorded mortgage such as at issue in this case, the reader might consider the fact that in one case that came before the Court in recent years, the mortgage instrument reversed the identification of "mortgagor" and "mortgagee."  Litigation in a state court was necessary to "reform the instrument."  Both parties happened to be lawyers - - one lawyer selling his house to another lawyer, his friend.

## PAYMENTS MADE TO THE DEFENDANTS

The mortgage was voidable by the Trustee but was fully enforceable as between the parties until today, when it is set aside. The Trustee demands that the Defendants turn over all mortgage payments made to them by the Debtors since the Debtors filed their Chapter 7 petition two years ago. (He also seeks statutory interest on those payments.)

That demand raises an interesting question. This is a "preference" case, not a "fraudulent transfer" case. (Under the statutes of some states (New York included), some fraudulent transfers are stated to be "void." Many courts have explained the complications that can result from a strict application of such a statute, and so have interpreted "void" to mean "voidable." See *In re Best Products*, 168 B.R. 35 at 57, (Bankr. S.D.N.Y. 1994) (citing G. Glenn, Fraudulent Conveyances and Preferences, Vol. 1, §§ 111 at 221, 113 at 223 (1940).)

Preferential payments are never "void," but become "avoidable" if and when bankruptcy ensues.[5] This is the relatively rare case in which the avoidance of the <u>perfection</u> of an otherwise non-avoidable lien permits the Trustee to choose between preserving or not preserving the grant of the security interest (the mortgage lien) itself. Having set the perfection aside, he may choose (under 11 U.S.C. §§ 550 and 551) to step into the shoes of the mortgagees (for the benefit of all of the Debtors' creditors) and collect the mortgage payments over time, or may use the precise language of § 547(e) to consider the mortgage itself to be avoided, and sell the house "free and clear" of anything but the exemption that the Debtors were permitted when the dollar

---

[5] See *In re Nuttall*, 188 B.R. 732 (Bankr. W.D.N.Y. 1995), which considered the question of when a "preference claim" arises for bankruptcy purposes.

amount of that exemption presumed that the mortgage would be unassailable.

Because the Trustee has not sought return of the monthly mortgage payments that the Debtors made during the one-year pre-petition preference period, the question has an easy answer.[6] Post-petition payments made from post-petition income of Chapter 7 debtors are not of concern to a Chapter 7 trustee.

There being no evidence that post-petition payments on the mortgage were made with pre-petition assets, that part of the Trustee's Complaint is dismissed.

## CONCLUSION

The Court returns to an effort to speak plain English to Defendants Rote and Debtors Moorhouse now that the requisite legal-speak is done.

Loaning money to a relative to buy a house is a good thing. Getting back a mortgage (as was done here) is very important because there cannot later be a dispute between the lender and the borrower about the fact that the lender has a lien on the house as collateral for the loan. But the failure to "record" the mortgage at the County Clerk's office (with payment of the required fees (those can be high)) means that creditors of the borrowers do not know about the mortgage and so are not bound by the mortgage lien if the borrowers end up in this Court. People who loaned money to the Debtors (money that they might lose as a result of this Chapter 7

---

[6] Were he seeking return of the pre-petition payments, a seemingly different question would be presented. It has not been briefed. (It might make a suitable subject for a final essay exam question in a bankruptcy course in a law school.) Given that there is no meaning to the notion of a "preferential transfer" but for a bankruptcy filing, and given that but for a bankruptcy filing, perfection would be good "against the world," then what are the various parties to make of the fact that substantial payments were made (on a pre-petition basis) to pay down the lien that is set aside later?

case) may have done a credit search before extending credit to them. Because the mortgage was not recorded, they would think the home was free and clear. So they may have given credit in the form of a credit card or an installment loan for a car, or whatever. If the unrecorded mortgage (the "secret lien") were honored here, then those creditors will have been cheated. (The possibility that there were no such lenders is not relevant under the applicable bankruptcy statutes. The statutes are based on "hypothetical" creditors because an evidentiary hearing upon every claim by every creditor would cost so much that the bankruptcy system would be useless. It would grind to a halt.)

There is always a way to make a lien valid against anyone in the world. It is called "perfection" of the lien. It is an unfortunate word because it implies being "perfect." In fact it simply means telling the rest of the world that you have the lien; it is no longer a "secret lien" between the lender and the borrower.

When a borrower ends up in a bankruptcy court, a trustee is bound by law to represent the debtor's creditors - - the unpaid people, banks and landlords, etc., who never knew about the "secret lien." So the Trustee here must challenge the unrecorded mortgage lien for the benefit of all of the borrower's creditors. He prevails in this case.

Bankruptcy statutes are suspicious of the ways in which someone sliding toward a bankruptcy filing might try to help family members in a way that could hurt other creditors who did not have such "inside information." So in transactions among family members, the statutes "look back" a year before the bankruptcy filing, rather than only 90 days. Did a family member gain an advantage during that year, over the other people to whom the borrower owed money?

To summarize, "perfection" of a previously unperfected lien is one way in which a family member can gain an advantage over other creditors in an unfair manner.  Recordation of an older mortgage is "perfection."  It was "secret" until it was recorded.  If the transfer or recordation in the office of the county clerk occurs within one year before the borrower's family member's bankruptcy filing, it can be set aside.  And because of the intricacies of the statute the mortgage lien itself can also be set aside if the trustee so seeks, and it can be "preserved" for the benefit of the debtor's other creditors (11 U.S.C. § 551), even to the exclusion of a debtor's otherwise-available right to a "homestead exemption."

The Trustee may now choose to ask the Court to declare the mortgage void.  In that event, he is permitted to sell the house out from under the Debtors, but setting apart to them the portion of the proceeds that constitute their available "homestead exemption."  Or he may choose (under 11 U.S.C. § 551) to "preserve" the original mortgage and collect payments on it for the benefit of all of the Debtors' creditors, including the Defendants.  The Trustee shall submit an order of his choosing (as so described), but to be approved by the Defendants' counsel only as to form, and without prejudice to appeal, of course.

SO ORDERED.

Dated:     Buffalo, New York
           February 28, 2013

                                                    s/Michael J. Kaplan
                                                    _____
                                                    U.S.B.J.